IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MURANDA SPENLAU, | ) | CASE NO. 5:22-CV-00630-PAB |
| | ) | |
| Plaintiff, | ) | JUDGE PAMELA A. BARKER |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL | ) | JENNIFER DOWDELL |
| SECURITY ADMINISTRATION, | ) | ARMSTRONG |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I.      INTRODUCTION

Plaintiff Muranda Spenlau ("Ms. Spenlau") seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). (*See* ECF non-document entry dated September 2, 2022). For the reasons set forth below, I RECOMMEND that the Court AFFIRM the Commissioner's decision.

## II.      PROCEDURAL HISTORY

On March 27, 2020, Ms. Spenlau applied for DIB and SSI. (Tr. 671, 686). Ms. Spenlau's applications related to her depression, anxiety, obstructive sleep apnea, knees, hips, diabetes mellitus, fibromyalgia, arthritis, and bursitis. (Tr. 708).

The Social Security Administration ("SSA") denied Ms. Spenlau's applications initially and upon reconsideration. (Tr. 557-58, 577-78). Ms. Spenlau requested a hearing before an administrative law judge ("ALJ"). (Tr. 623). The ALJ held a telephonic hearing on December 23,

2020, at which Ms. Spenlau was represented by counsel. (Tr. 517). Ms. Spenlau testified, as did an impartial vocational expert ("VE"). On February 24, 2021, the ALJ issued a written decision, finding that Ms. Spenlau was not disabled. (Tr. 498). The ALJ's decision became final on March 21, 2022, when the Appeals Council declined further review. (Tr. 1).

On April 20, 2022, Ms. Spenlau filed her Complaint, challenging the Commissioner's final decision. (ECF Doc. No. 1). Ms. Spenlau asserts the following assignment of error:

(1)    The administrative law judge's finding that plaintiff retained a residual functional capacity for unskilled, low-stress work is not supported by substantial evidence.

(ECF Doc. No. 8, PageID # 1166).

## III.    BACKGROUND

### A.    Personal, Educational, and Vocational Experience

Ms. Spenlau was born in May 1989, and she was 30 years old on the alleged onset date. (Tr. 687).[1] She does not have any children. (Tr. 679). Ms. Spenlau is married but has been separated from her husband since 2010.  (Tr. 687). She has attended some college. (Tr. 528). She has previously worked as a sales associate, a nursing care associate, an assistant manager at Family Dollar, and a shift manager at Wendy's. (Tr. 529-32).

### B.    Relevant Hearing Testimony

#### 1.    Ms. Spenlau's Testimony

Ms. Spenlau testified that she has not worked on a full-time, sustained basis since 2016. (Tr. 528). She testified that she does not work due to her anxiety and because she cannot sit or stand for long periods of time. (Tr. 535). Ms. Spenlau further testified that she had not been able to keep any of her recent jobs because of her anxiety and depression, which caused her to come in

---

[1] Ms. Spenlau's disability applications list an onset date of December 31, 2016. (Tr. 671, 704). On December 16, 2020, Ms. Spenlau, through counsel, submitted a letter stating that she had alleged disability as of March 1, 2020, but that the Field Office had amended the date to December 31, 2016. (Tr. 765). Ms. Spenlau moved to clarify or amend her alleged onset date to March 1, 2020. *Id.*

2

late or leave early. (Tr. 542). Ms. Spenlau testified that her last three or four jobs had only lasted for a month at a time. *Id*.

Ms. Spenlau also testified that because of her anxiety and depression, she lacked motivation and had gained weight as a result. (Tr. 536). She testified that she does not leave her bed two to three days a week due to a combination of her depression, anxiety, and physical pain. (Tr. 543-44). Ms. Spenlau also testified that she cries all the time due to her depression and experiences panic attacks two to three times a week because of her anxiety. (Tr. 540-41). Ms. Spenlau further testified that she is on various medications, and that she does breathing exercises and listens to music to help with her anxiety. (Tr. 541, 544). She testified that the breathing exercises do not seem to help her. (Tr. 544). Ms. Spenlau also testified that she does not drive because of her anxiety. (Tr. 527).

Ms. Spenlau testified that she was currently tutoring two children who are friends of the family twice a week. *Id*. She testified that she attempted to tutor the children every day, but that she could not handle that workload given her anxiety. *Id*. Ms. Spenlau testified that she would experience panic attacks and would need to hide in the bathroom. (Tr. 543). Ms. Spenlau also testified that tutoring two days a week is still too much for her, but that she is trying to continue the tutoring because she needs to do something with her time. *Id*.

### 2.  *Vocational Expert's Testimony*

The ALJ asked the VE to consider a hypothetical individual with Ms. Spenlau's age, education, and job history who was in the sedentary exertional range but: could occasionally operate foot controls with her left foot; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; occasionally balance, stoop, kneel, and crouch; never crawl; would need to avoid exposure to extreme cold, heat, wetness, humidity, vibrations and pulmonary irritants, and unprotected and moving mechanical parts; could perform a wide variety of simple and complex

tasks but could not perform tasks that required a high production rate; could interact occasionally with supervisors and a small group of familiar coworkers; could only interact incidentally and superficially with the general public; could not perform group, tandem, or collaborative tasks; could not manage, direct, or persuade others; and could respond appropriately to occasional changes in a routine work setting of those changes were easily explained or demonstrated in advance of gradual implementation. (Tr. 548-50). The VE responded that the hypothetical individual could not perform Ms. Spenlau's past work, but could perform other unskilled, sedentary work, such as document specialist or preparer, eyeglass lens polisher, or bench hand. (Tr. 550-51).

The ALJ next asked the VE whether the hypothetical individual could still perform those jobs if the individual needed to use a cane while ambulating. (Tr. 551). The VE responded that the hypothetical individual could still perform those jobs. *Id*. The ALJ next asked the VE whether it would impact her answer if the hypothetical individual could only occasionally interact with supervisors and would otherwise need to work in isolation. *Id*. The VE responded that the need to work in isolation would be work preclusive. (Tr. 551-52).

The ALJ next asked the VE how long an individual could be off-task or absent from work. (Tr. 552). The VE responded that being off-task 10% of the time or more would be work preclusive, while missing more than one day per month would be work preclusive. (Tr. 552). The VE also testified that absenteeism included arriving late or leaving early. *Id*. The VE further testified that the hypothetical worker would be terminated if she took more than two 15-minute breaks and one half-hour lunch per day. (Tr. 552-53).

### C.  Relevant Opinion Evidence[2]

#### 1.  *Alexandra Gauntner, LPCC*

Ms. Gauntner was a mental health counselor for Ms. Spenlau.  On January 28, 2021, Ms. Gauntner filled out a mental impairment questionnaire for Ms. Spenlau. (Tr. 1120). Ms. Gauntner stated that Ms. Spenlau had begun treatment in 2018 and had appointments every two to three weeks. *Id*. Ms. Gauntner also evaluated Ms. Spenlau as having cyclothymic disorder; anxiety disorder, unspecified; and depressive disorder, unspecified. *Id*. Ms. Gauntner stated that Ms. Spenlau presented with an anxious and depressed mood as evidenced by her nervousness and self-reports. *Id*. Ms. Gaunter also diagnosed Ms. Spenlau as having a loss of interest in almost all activities, decreased energy, generalized persistent anxiety, mood disturbance, and difficulty thinking or concentrating. (Tr. 1121). Ms. Gauntner also stated that Ms. Spenlau was responsive and cooperative to treatment recommendations and that her prognosis was good. (Tr. 1120).

Ms. Gaunter further opined that Ms. Spenlau had a "moderate" impairment in understanding, remembering, or applying information; interacting with others; maintaining concentration, persistence, or pace; and adapting or managing herself, as well as a mild impairment or no impairment in understanding, remembering, or applying information. (Tr. 1122). Ms. Gaunter also checked a box stating that Ms. Spenlau would be absent from work approximately four days per month. (Tr. 1123). Ms. Gauntner did not provide any written elaboration on her opinion that Ms. Spenlau would be absent from work four days per month. *Id*.

The ALJ found that Ms. Gauntner's opinions were unpersuasive. (Tr. 509). In particular, the ALJ rejected Ms. Gauntner's opinion that Ms. Spenlau would miss four days of work per month, finding that it was (1) inconsistent with the medical record as a whole; (2) internally

---

[2] At the administrative level, Ms. Spenlau alleged both physical and mental impairments. In this proceeding, Ms. Spenlau challenges only the ALJ's determination with respect to her mental impairments. Accordingly, I summarize only evidence regarding Ms. Spenlau's mental impairments.

inconsistent with the moderate limitations that Ms. Gauntner found; and (3) unsupported and unexplained. *Id*.

### 2.    Natalie A. Meyer, PsyD

On January 25, 2017—three years before Ms. Spenlau's amended alleged onset date—Dr. Meyer completed a psychological evaluation of Ms. Spenlau in connection with a prior disability claim that Ms. Spenlau filed. (Tr. 1088). Dr. Meyer diagnosed Ms. Spenlau with cyclothymic disorder and unspecified anxiety disorder. (Tr. 1092). Dr. Meyer also opined that Ms. Spenlau presented with a flat affect and appeared somewhat downcast at times. (Tr. 1091). Dr. Meyer further opined that Ms. Spenlau did not display any autonomic or motor indications of anxiety. *Id*.

Dr. Meyer also stated that Ms. Spenlau reported a history of suicidal ideation and hospitalization in the past, but that she was receiving mental health services and that those services were helping somewhat.  (Tr. 1092). Ms. Spenlau also reported feeling anxious and agitated at times, while feeling depressed and withdrawn at other times. *Id*. Dr. Meyer opined that, with appropriate interventions, Ms. Spenlau's prognosis was good. *Id*. Dr. Meyer also opined that Ms. Spenlau was not significantly limited in her ability to understand, remember, and carry out instructions or respond appropriately to supervision and coworkers. (Tr. 1092-93).

Dr. Meyer opined that Ms. Spenlau's symptoms of depression and anxiety may lead to decreased attention and concentration skills, but that Ms. Spenlau was able to identify strategies for managing stress. (Tr. 1093). Dr. Meyer also opined that work pressure might result in an increase in reported anxiety, discomfort, withdrawal from others, slowed work performance, or other behavior that would impact Ms. Spenlau's ability to cope appropriately in a work setting. *Id*. The ALJ found Dr. Meyer's opinions persuasive. (Tr. 509).

### 3.    Joan Williams, PhD, and Aracelis Rivera, PsyD

Dr. Williams and Dr. Rivera were state agency medical examiners who reviewed Ms. Spenlau's records in connection with her disability determination. (Tr. 562, 571). On July 6, 2020,

Dr. Williams opined that Ms. Spenlau had no limitations in understanding, remembering, or applying information. (Tr. 562). Dr. Williams also opined that Ms. Spenlau had moderate limitations in interacting with others; concentrating, persisting, or maintaining pace; and adapting and managing herself. *Id*. On September 8, 2020, Dr. Rivera concurred in Dr. Williams' assessment. (Tr. 582, 592). The ALJ found the opinions of Dr. Williams and Dr. Rivera persuasive. (Tr. 509).

### D.   Relevant Medical Evidence

On January 13, 2020, Ms. Spenlau saw Ms. Gauntner. (Tr. 887).[3] Ms. Spenlau reported that she had experienced a stressful couple of weeks because her sister had kicked her out of the house, and she had been forced to move back in with her mother. (Tr. 890). Ms. Spenlau reported that her depression had hit rock bottom but that she was trying to think more positively. *Id*. Ms. Spenlau also reported that she had experienced suicidal ideation, but denied any current suicidal ideation, plan, intent, or means. *Id*. Ms. Spenlau also said that she wanted to get back into counseling more consistently and to apply for disability. *Id*. Ms. Spenlau had no significant changes in her mood/affect, thought process/orientation, motor activity and speech, behavior/functioning, or medical conditioning. (Tr. 888). Ms. Gauntner assessed Ms. Spenlau's symptoms as moderate in severity. (Tr. 890).

On February 25, 2020, Ms. Spenlau saw Ms. Gauntner again. (Tr. 877). There were no significant changes in Ms. Spenlau's symptoms. (Tr. 878). Ms. Spenlau reported that she was having more depressed days lately, had been having a hard time getting out of bed, and experienced low mood and low energy. (Tr. 881). Ms. Spenlau also said that her anxiety was high and that she had been having panic attacks. *Id*. However, Ms. Spenlau said that she was motivated to continue working on her depression, anxiety, and physical health. *Id*. Ms. Gauntner again assessed Ms.

---

[3] Ms. Gauntner is identified as Alexandra Schulz in some of Ms. Spenlau's treatment notes.

Spenlau's symptoms as moderate in severity. (Tr. 880).

On March 23, 2020, Ms. Spenlau saw Jennifer Spies, CNP, via telephone. (Tr. 866). Ms. Spenlau reported that her anxiety increased when her nieces and nephew called her name multiple times, and that she would take a break to listen to music. (Tr. 867). Ms. Spenlau also reported ongoing issues with lack of motivation, social isolation, and depression, saying she cried over everything. *Id*. Upon examination, Ms. Spenlau's mood was depressed and anxious, but her mental status was otherwise within normal limits. (Tr. 868). Nurse Spies assessed Ms. Spenlau's symptoms as moderate in severity. (Tr. 871).

On May 18, 2020, Ms. Spenlau saw Nurse Spies again via telephone. (Tr. 911). Ms. Spenlau said that she had been doing "pretty good" since her Abilify dosage had increased. (Tr. 912). She also reported decreased depression, improved motivation, and that she was no longer experiencing hypersomnia. *Id*. Ms. Spenlau stated that she was tutoring two children twice a week and that she was in the process of applying for disability. *Id*. Ms. Spenlau further reported that she was helping with her sister's two young children. *Id*. Ms. Spenlau also reported that her anxiety would sometimes increase when the children called her name multiple times. *Id*. Ms. Spenlau did not display any abnormal findings upon examination. (Tr. 913).

On July 7, 2020, Ms. Spenlau had another follow-up visit with Nurse Spies. (Tr. 998). Ms. Spenlau again noted decreased depression, improved motivation, and a lack of hypersomnia after her Abilify dosage was increased. (Tr. 999). Ms. Spenlau's examination was within normal limits. (Tr. 1000).

On August 3, 2020, Ms. Spenlau saw Ms. Gauntner via telephone. (Tr. 993). Ms. Spenlau reported no new or worsening symptoms. (Tr. 994). Ms. Spenlau reported that she felt okay on some days, while on other days her anxiety and depression were elevated and she experienced crying spells. (Tr. 997). Ms. Spenlau also said that she was planning on beginning tutoring in the

fall. *Id*. Ms. Gauntner assessed Ms. Spenlau's symptoms as moderate in severity. (Tr. 996).

On August 31, 2020, Ms. Spenlau saw Ms. Gauntner for another telephonic visit. (Tr. 988). Ms. Spenlau reported no new or worsening symptoms. (Tr. 989). Ms. Spenlau reported that her depression had improved since her medication was increased, but that she had also had a couple of days when she was depressed. (Tr. 992). Ms. Spenlau also reported that her anxiety had been elevated for unknown reasons. *Id*. Ms. Spenlau reported that she was very anxious the previous day, so she had tried listening to music, lying down, and doing deep breathing exercises, but remained anxious, shaky, and irritable. *Id*. Ms. Spenlau further said that she had been trying to use coping skills but was still having trouble managing. *Id*. Ms. Spenlau also said that tutoring the children had been a positive for her as it got her out of bed. *Id*. Ms. Gauntner against assessed Ms. Spenlau's symptoms as moderate in severity. (Tr. 991).

On September 15, 2020, Ms. Spenlau saw Nurse Spies. (Tr. 1080). Ms. Spenlau reported that she had experienced two panic attacks since her last visit. (Tr. 1081). Ms. Spenlau said that the first one occurred when she was sitting at her sister's house and lasted for three to five minutes. *Id*. Ms. Spenlau said that the second panic attack occurred when she was overwhelmed by tutoring and lasted for two minutes. *Id*. Ms. Spenlau also said that she enjoyed tutoring, as it gave her a purpose and a reason to get out of bed. *Id*. On examination, Ms. Spenlau's mood was anxious, but her mental status was otherwise within normal limits. (Tr. 1082).

On September 22, 2020, Ms. Spenlau had another telephonic follow-up visit with Ms. Gauntner. (Tr. 1075). Ms. Spenlau reported no new or worsening symptoms. (Tr. 1076). Ms. Spenlau reported that her anxiety had been elevated but denied any new panic attacks. (Tr. 1079). Ms. Spenlau also said that she had a few depressed days in the prior couple weeks. *Id*. Ms. Spenlau further said that tutoring had been a positive for her but was stressful at times. *Id*. Ms. Gauntner recommended that Ms. Spenlau take short breaks while tutoring. *Id*. Ms. Gauntner again assessed

Ms. Spenlau's conditions as moderate in severity. (Tr. 1078).

On October 21, 2020, Ms. Spenlau again saw Ms. Gauntner via telephone. (Tr. 1070). Ms. Spenlau reported no significant changes in her symptoms. (Tr. 1071). Ms. Spenlau reported that she was feeling overwhelmed and that her anxiety was through the roof. *Id*. Ms. Spenlau stated that she was continuing to tutor, which was stressful at times. *Id*. Ms. Gauntner again assessed Ms. Spenlau's conditions as moderate in severity. (Tr. 1073).

On November 4, 2020, Ms. Spenlau had another telephonic follow-up visit with Ms. Gauntner. (Tr. 1065). Ms. Spenlau reported no significant changes in her symptoms. (Tr. 1066). Ms. Spenlau reported that her anxiety and depression were elevated for unknown reasons. (Tr. 1068). Ms. Spenlau also reported that she was feeling overwhelmed and frustrated with all of her medical issues. *Id*. Ms. Gauntner again assessed Ms. Spenlau's conditions as moderate in severity. (Tr. 1068).

On November 9, 2020, Ms. Spenlau saw Nurse Spies by telephone. (Tr. 1057). Ms. Spenlau said that she had experienced a few panic attacks since her last visit and that she had been doing deep breathing exercises. (Tr. 1058). On examination, Ms. Spenlau's mood was depressed and anxious, but her mental status was otherwise within normal limits. *Id*.

## IV.   THE ALJ'S DECISION

The ALJ first determined that Ms. Spenlau met the insured status requirements of the Social Security Act through March 31, 2020. (Tr. 503). The ALJ next determined that Ms. Spenlau had not engaged in substantial gainful activity since March 1, 2020, the alleged onset date. *Id*.

The ALJ further determined that Ms. Spenlau had the following severe impairments: morbid obesity; left trochanteric bursitis; left hip tendinitis; left knee degenerative joint disease; lumbosacral radiculopathy; asthma; obstructive sleep apnea; type II diabetes mellitus; fibromyalgia; depressive disorder; cyclothymic disorder; bipolar disorder; and anxiety disorder.

(Tr. 503-04). However, the ALJ also determined that none of Ms. Spenlau's severe impairments, whether considered singly or in combination, met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix I. (Tr. 504).

The ALJ next determined that Ms. Spenlau had the residual functional capacity ("RFC") to:

> Perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except occasionally operate foot controls with the left lower extremity; never climb ladders, ropes, or scaffolds, or crawl; occasionally climb ramps and stairs, balance, stoop, kneel, or crouch; avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, vibrations, and pulmonary irritants such as fumes, odors, dusts, gases and poor ventilation, and avoid all exposure to hazards such as unprotected heights and moving mechanical parts; can perform a wide variety of both simple and complex tasks, but cannot perform tasks which require a high production rate pace such as assembly line work; can interact on an occasional basis with supervisors and a small group of familiar coworkers, with no more than incidental interaction with the general public, and should be limited to superficial contact, meaning no sales, arbitration, negotiation, conflict resolution or confrontation, no group, tandem or collaborative tasks, and no management, direction or persuasion of others; and can respond appropriately to occasional changes in a routine work setting, as long as any such changes are easily explained and/or demonstrated in advance of gradual implementation.

(Tr. 505-06). In formulating Ms. Spenlau's RFC, the ALJ found that Ms. Spenlau's allegations of her impairments were "less than fully consistent" with the evidence and that there were "no indications in the medical record of limitations beyond the performance of sedentary level work with the non-exertional restrictions listed above." (Tr. 508).

The ALJ next determined that Ms. Spenlau was unable to perform any past relevant work. (Tr. 510). However, the ALJ determined that, considering Ms. Spenlau's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Ms. Spenlau could perform, including document preparer, polisher of eyeglass frames, and bench hand. (Tr. 510-11). Accordingly, the ALJ determined that Ms. Spenlau was not disabled. (Tr. 511).

## V.    LAW & ANALYSIS

### A.    Standard of Review

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 Fed. Appx. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g).

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quotation omitted). The standard for "substantial evidence" is "not high." *Id*. While it requires "more than a mere scintilla," "[i]t means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation omitted).

In addition to considering whether substantial evidence supports the Commissioner's decision, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)) (alteration in original).

### B.  **Standard for Disability**

To establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315, 404.1505(a). A disabled claimant may also be entitled to receive SSI benefits. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.[4]

Consideration of disability claims follows a five-step review process. 20 C.F.R. §404.1520. First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time of the disability application. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

Third, if the claimant is not performing substantial gainful activity, has a severe impairment

---

[4] The DIB and SSI regulations cited herein are generally identical. Accordingly, for convenience, in some instances, citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20 C.F.R. § 404.1501 *et seq*. The analogous SSI regulations are found at 20 C.F.R. § 416.901 *et seq*., corresponding to the last two digits of the DIB cite (*e.g.*, 20 C.F.R. § 404.1520 corresponds with 20 C.F.R. § 416.920).

that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education, or work experience. *See* 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals a listing and satisfies the durational requirement, the ALJ must find that the claimant is disabled. *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 Fed. Appx. 426, 431 (6th Cir. 2014).

Before considering Step Four, the ALJ must determine the claimant's residual functional capacity, *i.e.*, the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. § 404.1520(e) and 416.930(e). "A claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner." *Golden v. Berryhill*, No. 1:18CV00636, 2018 WL 7079506, at *17 (N.D. Ohio Dec. 12, 2018), *report and recommendation adopted sub nom*, 2019 WL 415250. The ALJ is "charged with the responsibility of determining the RFC based on [the ALJ's] evaluation of the medical and non-medical evidence." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). "[T]he ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Golden*, 2018 WL 7079506 at *17. However, "[i]t is plaintiff's burden to prove the severity of her impairments, and to provide evidence establishing her RFC." *Lumpkin v. Comm'r of Soc. Sec.*, No. 1:20-CV-1849, 2021 WL 4987607, at *3 (N.D. Ohio Oct. 27, 2021).

At the fourth step, if the claimant's impairment or combination of impairments does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, the claimant is not disabled if other work exists in the national economy that the claimant can perform. 20 C.F.R. §§ 404.1520(g),

14

404.1560(c), and 416.920(g). *See Abbott*, 905 F.2d at 923.

    **C.**   <u>**Analysis**</u>

    The ALJ determined that Ms. Spenlau had the RFC to perform unskilled, low-stress work. Ms. Spenlau argues the ALJ's formulation of her RFC constituted reversible error. In particular, Ms. Spenlau argues that: (1) substantial evidence does not support the ALJ's assessment of her mental impairments; and (2) the ALJ improperly rejected the opinion of Ms. Gauntner that Ms. Spenlau would be absent from work four days per month. For the reasons set forth below, Ms. Spenlau's arguments are without merit.

    *1.*    ***The ALJ's Assessment of Ms. Spenlau's Mental Impairments***

    Ms. Spenlau first argues that the ALJ's RFC was not supported by substantial evidence because the ALJ failed to account for the severity of her mental impairments. As noted above, the standard for "substantial evidence" is "not high." *Biestek*, 139 S.Ct. at 1154. "The substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). A reviewing court may not "try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

    As an initial matter, Ms. Spenlau argues that the ALJ erred in formulating her RFC because the ALJ relied in part on Dr. Meyer's psychological evaluation, even though it was performed in January 2017 – three years before her amended alleged onset date of March 1, 2020. However,

"an ALJ is free to consider all the evidence in the record as long as [the ALJ] considers both pre and post-onset date evidence in [the ALJ's] determination." *Lane v. Comm'r of Soc. Sec.*, No. 1:14 CV 2803, 2016 WL 410871, at *6 (N.D. Ohio Feb. 3, 2016) (holding that ALJ did not err in relying on opinion issued prior to alleged onset date); *see also Goins v. Berryhill*, No. 3:16-CV657-DCP, 2018 WL 4512063, at *5 (E.D. Tenn. Sept. 20, 2018) (holding that ALJ did not commit reversible error in relying on medical opinion issued prior to onset date where ALJ cited to evidence post-dating onset date); *Puterbaugh v. Colvin*, No. 3:12cv00031, 2013 WL 3989581, at *15 (S.D. Ohio Aug. 2, 2013), *report and recommendation adopted*, 2013 WL 4457364 ("The Court is unaware of, and Plaintiff has not cited to, any rule, regulation, or case prohibiting an ALJ from considering evidence in the record simply because it is from prior to an alleged disability onset date.").

Here, the ALJ found that Dr. Meyer's opinion was "mostly consistent" with Ms. Spenlau's RFC, "as well as the claimant's medical records and treatment history, without evidence of psychiatric hospitalization or other[] issues since the alleged onset date." (Tr. 509). The ALJ also noted that Ms. Spenlau admitted seeing a positive response to her psychotropic medications and counseling sessions, and that there was no evidence of psychiatric hospitalization in her medical records. (Tr. 508). The ALJ further noted that Ms. Spenlau had reported mostly mild to moderate symptoms to Ms. Gauntner and Nurse Spies. *Id.* The ALJ thus properly considered evidence post-dating Ms. Spenlau's alleged onset date, and the ALJ's additional reliance on Dr. Meyer's opinion does not constitute reversible error.

But if the ALJ should not have considered Dr. Meyer's opinion, however, any error was harmless because substantial evidence supports the ALJ's determination even if the opinions of the state agency medical examiners are disregarded in their entirety. *See Dena L. v. Comm'r of Soc. Sec.*, No. 3:20-cv-00376, 2023 WL 195283, at *8 (S.D. Ohio Jan. 17, 2023) (holding that ALJ's determination was supported by substantial evidence even if ALJ should not have relied on

opinion pre-dating onset date where other evidence ALJ relied on provided substantial support for ALJ's conclusion).

Ms. Spenlau next argues that the ALJ erred because the ALJ only discussed two dates of treatment that Ms. Spenlau received from Ms. Gauntner and Nurse Spies. In her reply brief, however, Ms. Spenlau acknowledges that the ALJ did include a citation to the entirety of her treatment records in his decision, but she argues that the ALJ did not discuss the remainder of her records in any detail. (ECF No. 11, PageID # 1199). However, "[i]t is well-established there is no requirement that the ALJ discuss each piece of evidence or limitation considered" so long as the ALJ does not "selectively include[] only those portions of the medical evidence that places a claimant in a capable light and fails to acknowledge evidence that potentially supports a finding of disability." *Borawski v. Comm'r of Soc. Sec.*, No. 1:20-CV-01091-JDG, 2021 WL 811717, at *15 (N.D. Ohio Mar. 3, 2021); *see also Smith v. Comm'r of Soc. Sec.*, No. 3:18CV622, 2019 WL 764792, at *9 (N.D. Ohio Feb. 21, 2019) ("While the ALJ must consider all the evidence in the record, there is no requirement that the ALJ discuss all the evidence or, more specifically, every limitation considered by [a physician].").

Ms. Spenlau suggests that the ALJ's discussion "may not be a fair illustration, overall" of her functioning. (ECF No. 8, PageID # 1169). In particular, Ms. Spenlau argues that the ALJ overlooked evidence of her panic attacks, tearfulness, shaking, shortness of breath, elevated anxiety, and need for unscheduled breaks. However, the ALJ specifically noted that Ms. Spenlau had presented with an elevated anxiety level, had experienced panic attacks, and was having ongoing issues with depression and anxiety, including a lack of motivation and low energy. (Tr. 508). The ALJ also expressly noted Ms. Spenlau's report that one of her panic attacks occurred because she was feeling overwhelmed in tutoring the children. *Id*. And while Ms. Spenlau claims that the ALJ did not cite any records to support the conclusion that Ms. Spenlau had admitted

17

seeing a positive response from her medications, treatment records indicate that Ms. Spenlau told both Ms. Gauntner and Nurse Spies that her condition had improved as a result of her medication. (Tr. 912, 989, 999). The ALJ thus acknowledged both positive and negative evidence from Ms. Spenlau's medical history in formulating her RFC.

Moreover, to the extent Ms. Spenlau argues that the ALJ should have more fully credited her testimony regarding the severity of her mental impairments, Ms. Spenlau's argument is without merit. An ALJ is "not required to accept a claimant's subjective symptom complaints and may properly discount the claimant's testimony about her symptoms when it is inconsistent with other evidence." *Lumpkin*, 2021 WL 4987607, at *4; *see also Adams v. Comm'r of Soc. Sec. Admin.*, No. 5:21-CV-01465-AMK, 2023 WL 2306672, at *9 (N.D. Ohio Mar. 1, 2023) (the ALJ is "not required to accept [a claimant's] subjective complaints at face value"). Indeed, an ALJ is entitled to make credibility determinations with respect to a claimant's subjective statements regarding her symptoms so long as the ALJ's determinations are reasonable and supported by the record. *See Kurman v. Kijakazi*, No. 1:20-cv-1837, 2022 WL 1067568, at *7 (N.D. Ohio Jan. 13, 2022) (citing *Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007)). "[I]n practice ALJ credibility findings have become essentially 'unchallengeable.'" *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 476 (6th Cir. 2016) (citing *Payne v. Comm'r of Soc. Sec.*, 402 F. App'x 109, 113 (6th Cir. 2010)).

Here, the ALJ found that Ms. Spenlau's testimony regarding her mental impairments was not entirely consistent with the record evidence given her largely conservative treatment history, mental status examinations, reports that her medication was helping her conditions, and lack of hospitalizations for mental health issues. (Tr. 508-09). Substantial evidence supported the ALJ's determination. *See Adams*, 2023 WL 2306672, at *9 (N.D. Ohio Mar. 1, 2023) (holding that ALJ's determination was supported by substantial evidence where ALJ considered plaintiff's subjective

complaints and unsuccessful attempts at treatment, but also considered the limited objective evidence supporting those complaints). Ms. Spenlau's argument that the ALJ failed to properly evaluate the evidence of her mental impairments is therefore without merit.

### 2.    The ALJ's Rejection of Ms. Gauntner's Opinion

Ms. Spenlau also argues that the ALJ erred in rejecting Ms. Gauntner's opinion that Plaintiff would miss four days of work a month due to her impairments, which, given the VE's testimony, would be work-preclusive if accepted. (Tr. 552). Because Ms. Spenlau filed her disability claim after March 27, 2017, the "treating physician" rule, pursuant to which an ALJ was required to give controlling weight to an opinion from a treating physician absent good reason not to, does not apply. *See* 20 C.F.R. § 404.1527; *Merrell v. Comm'r of Soc. Sec.*, 1:20-cv-769, 2021 WL 1222667, at *6 (N.D. Ohio Mar. 16, 2021), *report and recommendation adopted*, 2021 WL 1214809. Instead, the current regulations stated that the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).

The SSA considers opinions from medical sources under five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as familiarity with other evidence in the claim or with the disability program's policies and evidentiary requirements. 20 C.F.R. § 404.1520c(c). Section 404.1520c(b)(1) specifically provides that "it is not administratively feasible for [the ALJ] to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record." 20 C.F.R. § 404.1520c(b)(1). Of the five factors, supportability and consistency are the most important, and an ALJ must explain how the ALJ considered them. 20 C.F.R. § 404.1520c(b)(2). The ALJ "may" but "is not required to" explain

how the ALJ considered the remaining factors. *Id*.

The "supportability" factor looks to how well the medical source supports the opinion with objective medical evidence from the record. *See* 20 C.F.R. § 404.1520c(c)(1). "In other words, the supportability analysis focuses on the physicians' explanations of the opinions." *Lavenia v. Comm'r of Soc. Sec.*, No. 3:21cv674, 2022 WL 2114661, at *2 (N.D. Ohio June 13, 2022) (quoting *Coston v. Comm'r of Soc. Sec.*, No. 20-12060, 2022 WL 989471, at *3 (E.D. Mich. Mar. 31, 2022)). The "consistency" factor looks to how consistent the medical opinion is with evidence from other medical and nonmedical sources. *See* 20 C.F.R. § 404.1520c(c)(2). "As long as the ALJ discussed the supportability and consistency of the opinion and supported his conclusions with substantial evidence within his decision, the Court will not disturb his decision." *Njegovan v. Comm'r of Soc. Sec. Admin*., No. 5:21-CV-00002-CEH, 2022 WL 1521910, at *4 (N.D. Ohio May 13, 2022).

Here, the ALJ rejected Ms. Gauntner's opinion that Ms. Spenlau would miss four days of work a month on several grounds: (1) it was inconsistent with the medical records as a whole, including Ms. Spenlau's positive response to psychotropic medications and counseling sessions and largely unremarkable symptoms; (2) it was internally inconsistent given Ms. Gauntner's assessment that Ms. Spenlau only experienced moderate limitations; and (3) Ms. Gauntner provided little supporting evidence or explanation for her conclusions. (Tr. 508). Those reasons track the supportability and consistency requirements of the regulations and are supported by evidence in the record.

And, as courts have previously held, each of the grounds identified by the ALJ constitutes substantial evidence to support the ALJ's determination. *See O'Brien*, 819 F. App'x at 417 (holding that an ALJ can "properly discount[] the opinions of treating physicians where the opinions were incompatible with the claimant's generally conservative course of treatment or

activities of daily living"); *Demastus v. Colvin*, No. 5:16-CV-00836, 2017 WL 570928, at *9 (N.D. Ohio Jan. 27, 2017), *report and recommendation adopted sub nom*, 2017 WL 564795  (holding that substantial evidence supported ALJ's decision to discount treating physician's opinion where physician "provided no medical, clinical, or diagnostic basis for the conclusion that Plaintiff may miss four to six days of work every month"); *Day v. Comm'r of Soc. Sec.*, No. 1:16-cv-2813, 2017 WL 6508985, at *8-9 (N.D. Ohio Dec. 5, 2017), *report and recommendation adopted*, 2017 WL 6512292 (holding that substantial evidence supported ALJ's rejection of physician's opinion that claimant would be absent four days a month where ALJ concluded that physician's opinion was not corroborated by treatment notes and was internally inconsistent); *Miller v. Comm'r of Soc. Sec. Admin*, No.1:18 CV 1079, 2019 WL 4111513, at *12 (N.D. Ohio Aug. 29, 2019) ("the ALJ's reliance on the unsupported nature of Dr. Nwaokafor's absenteeism opinion, citation to evidence of milder findings in the record, and conservative nature of Plaintiff's treatment combined suffice to provide good reasons to discount that opinion").

Finally, while Ms. Spenlau argues that other evidence in the record is consistent with Ms. Gauntner's assessment and would support a more restrictive RFC, a reviewing court cannot reweigh the evidence or second guess the ALJ's determination, so long as substantial evidence supports the ALJ's conclusion, which it does here.  *See Anderson v. Comm'r of Soc. Sec.*, No. 1:21-CV-1471, 2022 WL 4545188, at *2 (N.D. Ohio Sept. 29, 2022) ("it is also well-established that as long as the ALJ cites substantial, legitimate evidence to support the conclusion reached, the reviewing court may not second-guess that decision"); *Lambert v. Comm'r of Soc. Sec.*, No. 5:08CV1908, 2010 WL 546756, at *6 (N.D. Ohio Feb. 11, 2010) ("contrary evidence does not invalidate an ALJ's determination so long as the ALJ found substantial evidence to support his or her determination-even if this Court disagrees with that outcome"). And while Ms. Spenlau references her hearing testimony that she lost several jobs due to her anxiety, the ALJ was entitled

to weigh the credibility of her testimony, as discussed above. Accordingly, Ms. Spenlau's argument that the ALJ committed reversible error in rejecting Ms. Gauntner's opinion is without merit.

## VI.     RECOMMENDATION

Based on the foregoing, I RECOMMEND that the Court AFFIRM the ALJ's decision.

Dated: <u>April 14, 2023</u>                           <u>*s/ Jennifer Dowdell Armstrong*</u>
                                                       Jennifer Dowdell Armstrong
                                                       U.S. Magistrate Judge

## VII.     NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

22

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).